HAMITER, Justice.
 

 As the holder and owner of a promissory note secured by a vendor’s lien and special mortgage on a lot of ground in the City of New Orleans plaintiff, James E. Comiskey, resorted in this cause to executory process to obtain the seizure and sale of the property. The note, together with its security, had been given by the defendant, William Disalvo, and represented a part of the consideration for his purchase of the lot from Charles J. Ziegler on March 24, 1943. It was acquired in due course by plaintiff.
 

 Under the writ of seizure and sale, which recited that there was due to plaintiff the sum of $5,019.07, plus interest, taxes and costs, the property was adjudicated at a sheriff’s sale on September 28, 1944, for $4,650. But this amount was insufficient to satisfy all of the encumbrances affecting the property, they being, according to a mortgage certificate of that date, as follows :
 

 Mortgage granted by said William Di-salvo in favor of his vendor, Charles J.
 
 *485
 
 Ziegler, to secure the sum of $5,250, interest, etc., as per act before Clarence de Lucas, Notary Public, dated March 24, 1943, recorded in the Mortgage Office on March 25, 1943, in Book 1652, folio 378, being the mortgage foreclosed on herein.
 

 Judgment in favor of Philip Rissuto against William Disalvo, in the sum of $1,050, interest, etc., rendered by the Civil District Court for the Parish of Orleans, under the No. 256,065 of its docket, dated June 2, 1944, recorded in the Mortgage Office on the same day, in Book 1601, folio 546.
 

 Judgment for license tax in favor of the State of Louisiana and against William Disalvo, in the sum of $333.33, interest, etc., rendered by the Civil District Court for the Parish of Orleans, under the No. 218,141 of its docket, dated July 27, 1936, recorded in the Mortgage Office on July 28, 1936, in Book 1507, folio 221.
 

 Whereupon, the civil sheriff of the Parish of, Orleans caused the issuance of a rule, under which all interested parties were cited, for the purpose of obtaining a judicial ranking of the encumbrances.
 

 After trial of the rule, the court decreed that the claims be paid from the proceeds of the sheriff’s sale in the following order:
 

 1. The vendor’s lien and mortgage held by plaintiff.
 

 2. Judgment of the State of Louisiana for the license tax due it.
 

 3.Judgment in favor of Philip Russ uto.
 

 From this ruling the State of Louisiana appealed, thereby presenting for
 
 our
 
 determination the question of whether its claim should be satisfied by preference and priority over the vendor’s lien of plaintiff, James E. Comiskey.
 

 The record does not contain a copy of the State’s judgment or of the proceedings in which it was rendered. From the brief of counsel we learn, however, that it was obtained in July, 1936, in a suit brought against William Disalvo to recover the unpaid balance ($333.33, with penalties and interest) of an occupational license procured by him on September 21, 1935, in order to engage in the City of New Orleans in the business described in Section 1(a) of Act No. 24 of the Third Extra Session of 1935. And in the judgment there was recognized a first lien and privilege of the State upon all of the property, movable and immovable, of such tax debtor.
 

 The mentioned statute, under which Di-salvo was sued, did not itself create a first lien and privilege in favor of the State. It did in Section 4 thereof, however, authorize the Supervisor of Public Accounts to enforce payment of the assessed taxes “in the same manner as provided for the collection of license taxes levied by Act 15 of the Third Extra Session of 1934 and its amendments * * And Section 52 of the latter act made provision for such lien and privilege as follows: “That all un
 
 *486
 
 paid licenses shall bear interest at the rate of two percent per month from the first day of March, and the payment thereof shall be secured by first lien and privilege in favor of the State upon the property, movable and immovable, of the delinquent owing the license, and the Supervisor of Public Accounts shall collect said license and interest in the manner prescribed by existing laws.”
 

 This section, by the authority of which the lien and privilege was recognized in the State’s judgment, was amended by Act No. 429 of 1938, § 1, to the extent of making the lien and privilege applicable to property used in carrying on the business as well as that belonging to the delinquent tax debtor. But by Act No. 368 of 1940, § 1, said Section 52 as amended by the 1938 Act, was further amended and re-enacted so as to provide, among other things, that the State’s lien and privilege should not take priority over a subsequently recorded vendor’s lien retained in an act of transfer of property. And in 1942, by Act No. 166, § 11, said Section 52, as amended, was again amended and re-enacted, and that statute, which is the latest on the subject, fails to accord to the State any first lien and privilege to secure the payment of license taxes.
 

 Relying on Acts No. 368 of 1940 and No. 166 of 1942, counsel for Comiskey, in their brief, point out that “ * * * the first lien and privilege accorded the State by the original provisions of Act No. 15 of 1934 of the Third Extra Session was first impaired, and, in the last act quoted, abolished.” Hence, they insist that the vendor’s lien in question, which was retained in an act of transfer of property and recorded subsequent to the 1940 and 1942 statutes, outranks the State’s claim herein. Countering, the State takes the position, to quote from the brief of its counsel, that “the legislation relied upon by opposing counsel is not, and was not intended to be, retroactive.
 

 “That, if the legislature intended the legislation to have retroactive effect, so as to subordinate the State’s highest lien to secure its claim for taxes, after same was reduced to judgment and its lien recognized therein, then said legislation is unconstitutional.”
 

 Had the vendor’s lien of Comiskey come into being prior to the enactment of the 1940 and 1942 legislation, even if subsequent to the obtaining and recordation of the tax judgment, there might be some merit in the State’s contention, for it could be argued forcefully (although we do not say correctly, because the question is not before us) that the rights of the parties were fixed by the law then in existence. But that contention overlooks the significant fact that the judgment debtor Disalvo did not purchase the property, and plaintiff’s security did not arise, until the year 1943. At that time there existed no law favoring the tax claim of the State over a vendor’s lien; on the contrary the latter was recognized as being superior to the
 
 *487
 
 former. ■ The State, in other words, could have no privilege on or vested right in the property involved in this cause until Disalvo’s purchase of it in 1943, and when that occurred our statutory law preferred the vendor’s lien to the license tax claim.
 

 Thus, the facts of this case do not furnish, and we do not decide, the legal question of whether the statutes of 1940 and 1942 are to be given a retroactive
 
 effect
 
 and applied to a vendor’s lien previously created. Involved here is merely the matter of applying those statutes to a subsequently arising vendor’s lien, and the trial court, in our opinion, has correctly ruled that it is to be paid by preference and priority over the State’s claim.
 

 The judgment is affirmed.
 

 BOND, J., absent.